```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
BARRY SIMON,

                            Plaintiff,

        -against-

CITY OF NEW YORK, ANTHONY BLANDING,
OBAFEMI IMOTEP, N.Y.P.D. P.O. HASNAT (9131),
N.Y.P.D. P.O. LEON (1579), MICHAEL A. CARDOZO,
THOMAS KIDERA, LESLY WILLIAMS,
DEPARTMENT OF HOUSING
PRESERVATION DEVELOPMENT MDR#312793,

                            Defendants.
------------------------------------------------------------X
```
FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ OCT 11 2012 ★
BROOKLYN OFFICE

NOT FOR PUBLICATION
**MEMORANDUM AND ORDER**
12-CV-1596 (CBA)

**AMON, Chief United States District Judge:**

On March 30, 2012, plaintiff Barry Simon, appearing *pro se*, filed a complaint against defendants. On April 4, 2012, Simon filed an amended complaint. Simon seeks damages and injunctive relief. The Court grants Simon's request to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(a). The amended complaint is dismissed as set forth below.

## Background

The Court takes judicial notice that Simon has already filed an action against several of the same defendants. See Simon v. Kidera, No. 11-CV-6161 (CBA) (filed Dec. 20, 2011). By Order dated January 4, 2012 (the "January 2012 Order"), the Court dismissed the claims against the Department of Housing and Preservation Development (HPD), Thomas Kidera, Lesly Williams, Anthony Blanding and Obafemi Imotep. See id., slip op. at 2-4. The false arrest claim against Police Officer Aquino was allowed to proceed. See id., slip op. at 5-6. In this action, Simon sues the same defendants who were dismissed in the prior action and includes additional defendants: the City of

New York,[1] Police Officer Hasnat, Police Officer Leon and Michael A. Cardozo, the Corporation Counsel for the City of New York.

The amended complaint in the instant action raises the following new factual allegations: (1) that Simon and defendant Anthony Blanding entered into a "properly executed {rent stabilized} lease involving Apartment #6 of 83 East 18th Street, Brooklyn, New York 11226" ("the apartment"); (2) that on February 24, 2011, Simon notified defendant Blanding that he "had obtained proof that the apartment was rent stabilized and that [he] wished to receive a copy of the lease agreement," but that Blanding refused Simon's request at defendant Obafemi Imotep's direction; (3) that in March and late July/August 2011, Simon filed lawsuits in housing court complaining that the apartment had a faulty mailbox and that Blanding and Imotep were tampering with his mail; (4) that on April 6, 2011, defendant Police Officers Hasnat and Leon arrived at the apartment at Imotep's request and "demanded that [Simon] present written proof that [he] lived at that address or else leave immediately;" (5) that on August 15, 2011, "Corporation Counsel claimed that the City of New York actually owned the premises in question and that Obamfemi Imotep was under lease agreement (rather than 'the landlord/owner' as he claimed to be)" and denied that Simon was a legal tenant of the apartment; and (6) that in July or August of 2011, Imotep filed a holdover petition against Simon, which was dismissed without prejudice to renewal on March 12, 2012 due to Imotep's failure to appear. Am. Compl. at ECF p. 4-6. The remaining claims were raised in the earlier action.

Simon again claims violations of due process under the Fourteenth Amendment and contends that he is entitled to damages pursuant to New York City's Rent Stabilization Laws. Simon also

---

[1] Simon's amended complaint uses the caption "Simon v. City of New York et al" and cites "the City of New York et al." under the subheading "Defendants." Am. Compl. at ECF p. 1-2. However, it does not actually list an address for the City in its list of named defendants. Liberally construing plaintiff's complaint, the Court reads the amended complaint as including the City as a named defendant.

makes conclusory allegations that the City of New York conspired with defendants to "harass, retaliate and discriminate against [him] for exercising [his] constitutional rights to make good faith complaints ...." Am. Compl. at ECF p. 7. Simon seeks damages under the Americans with Disabilities Act and "a restraining order of protection against each of the defendants to prohibit them from interfering with [his] future ability to enjoy the rent stabilized housing privileges owed to a disable[d] tenant." Id.

## Standard of Review

In reviewing Simon's amended complaint, the Court is mindful that "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks omitted). Consequently, "we must liberally construe [Simon's] pleadings, and must interpret his complaint to raise the strongest arguments it suggests." Abbas v. Dixon, 480 F.3d 636, 639 (2d Cir. 2007). This is particularly the case where "the *pro se* plaintiff alleges that her civil rights have been violated." Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008). Nevertheless, a complaint must plead "enough facts to state a claim to relief that is plausible on its face," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim will be considered "plausible on its face" "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Pursuant to the *in forma pauperis* statute, the Court must dismiss a complaint if it determines that the action "(i) is frivolous or malicious, (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Finally, if the Court "determines at any time that it lacks subject-matter jurisdiction,

3

the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

## Discussion

### I. Claims Against Department of Housing Preservation Development ("HPD")

As explained in the January 2012 Order, Section 396 of the New York City Charter forecloses lawsuits against New York City departments and agencies such as the HPD, as distinct from the City itself. See Jan. 12 Order at 3; Ximines v. George Wingate High Sch., 516 F.3d 156, 160 (2d Cir. 2008). All claims against HPD MDR # 312793 are therefore dismissed.

### II. Claims for Constitutional Violations

Simon raises several constitutional claims, which the Court construes as brought pursuant to the Civil Rights Act, 42 U.S.C. § 1983. Simon expressly alleges that defendants violated his due process rights under the Fourteenth Amendment. Am. Compl. ECF p. 3, 7. Simon further alleges unspecified constitutional violations by Officers Hasnat and Leon with respect to the events of April 6, 2011. Finally, Simon alleges that all defendants were part of a conspiracy to "harass, retaliate, and discriminate" against him. The Court construes this as arising under 42 U.S.C. §§ 1983 or 1985.

#### A. Section 1983 Claims Against Private Parties Blanding and Imotep

For the same reasons set forth in the January 12 Order, Simon's claims for constitutional violations under Section 1983 against Blanding and Imotep must be dismissed pursuant to § 1915(e)(2)(B). Simon's allegations of a nexus between the private defendants and the City are vague and conclusory and fail to demonstrate that the actions of the defendants should be treated as state action. See Jan. 2012 Order; 42 U.S.C. § 1983.

#### B. Section 1983 Claims Against Cardozo, Kidera, and Williams

For the same reasons set forth with respect to defendants Thomas Kidera and Lesly Williams

in the January 2012 Order, Simon fails to state a Section 1983 claim against defendants Michael A. Cardozo, Thomas Kidera and Lesly Williams, who are state actors, because he fails to provide facts to support a federal claim against these individuals.

As a prerequisite to a damage award under Section 1983, a plaintiff must allege the defendant's direct or personal involvement in the alleged constitutional deprivation. Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006). Here, Simon does not make any allegations that defendants Cardozo, Kidera or Williams deprived him of his civil rights. Indeed, not once in his Statement of Claim or Prayer for Relief does plaintiff even mention Cardozo or Kidera, and the only reference to Williams is that she "compiled and completed" Corporation Counsel's verified answer to Simon's August 2011 complaint in housing court. See Am. Compl. ECF p. 4-7. As is clear from a review of the exhibits annexed to Simon's amended complaint, Cardozo, Kidera, and Williams are involved in this matter only to the extent that they defended Simon's housing court actions against the City in their roles as the Corporation Counsel, Special Assistant Corporation Counsel, and an employee of HPD, respectively.

To the extent Simon names defendant Cardozo based solely on his supervisory role as the Corporation Counsel for the City of New York, the United States Supreme Court has held that "[b]ecause vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution," and rejected the argument that "a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution." Iqbal, 556 U.S. at 676-77. Since the claim against this supervisor defendant, as presently stated, can be supported only on the basis of *respondeat superior* or vicarious liability doctrines, which are not applicable to

Section 1983 actions, the amended complaint is dismissed against Cardozo for failure to state a claim under § 1915(e)(2)(B). As Simon has again failed to allege that either Kidera or Williams personally engaged in any violation of his civil rights, his Section 1983 claims against these defendants are also dismissed under § 1915(e)(2)(B).

### C. Section 1983 Claims Against Officers Hasnat and Leon

Simon's claims against Police Officers Hasnat and Leon concern events alleged to have occurred on April 6, 2011, when he was asked to produce proof of his tenancy. The Court again construes this claim as brought pursuant to the Civil Rights Act, 42 U.S.C. § 1983. Nevertheless, the Court finds that Simon has not alleged facts rising to the level of a constitutional violation. Simon does not allege that he was falsely arrested, nor does he allege that the defendant officers forced Simon to vacate the premises of the apartment when he could not produce written proof of lawful residency. Nor do the facts alleged in Simon's amended complaint support a claim of excessive force. Although Simon alleges that the officers were "extremely verbally aggressive," he alleges no injury resulting from the encounter of April 6. He has stated no claim actionable under Section 1983. See Justice v. McGovern, No. 11-cv-5076, 2012 WL 2155275, at *3 (E.D.N.Y. Jun. 12, 2012) ("Courts in the Second Circuit have consistently held that mere threats, verbal harassment or profanity, without any injury or damage, are not actionable under Section 1983") (internal quotation marks omitted). Simon's Section 1983 claims against Officers Hasnat and Leon are dismissed for failing to state a claim under § 1915(e)(2)(B).

### D. Section 1983 Claims Against the City of New York

Municipalities such as the City of New York can be liable under Section 1983 only if a plaintiff can show that a municipal policy or custom caused a deprivation of his or her constitutional rights. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978). As addressed above, Simon

has failed to adequately allege any violation of his constitutional rights. Even if he had, plaintiff has not alleged any City policy or custom upon which to base a finding of municipal liability. Simon's Section 1983 claims against the City are dismissed for failure to state a claim.

E. Conspiracy Claim Under Section 1983

To state a claim that private parties were engaged in a conspiracy with state actors under Section 1983, a plaintiff must allege "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Ciambriello, 292 F.3d at 324-25. Complaints that contain "conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed." Id. Simon has alleged no facts suggesting the existence of an agreement–express or tacit--between Inotep or Blanding and *any* state actor. See Gallop v. Cheney, 642 F.3d 364, 369 (2d Cir. 2011) (finding allegations of conspiracy "baseless" where the plaintiff "offer[ed] not a single fact to corroborate her allegation of a 'meeting of the minds' among the conspirators"); see also Webb v. Goord, 340 F.3d 105, 110-11 (2d Cir. 2003). Plaintiff's claims that defendants conspired to harass, retaliate, and discriminate against him are "unsupported, speculative, and conclusory." Boddie v. Schnieder, 105 F.3d 857, 862 (2d Cir. 1997). As such, any claim for Section 1983 conspiracy fails.

F. Conspiracy Claims Under Section 1985

Granting Simon's amended complaint the liberal reading required, his conspiracy claims may also be construed as brought under 42 U.S.C. § 1985.

Section 1985(2) contains two separate clauses. The first makes it unlawful for "two or more persons... [to] conspire to deter, by force, intimidation, or threat, any party... in any court of the *United States* from attending such court." 42 U.S.C. § 1985(2) (emphasis added). The second clause

7

makes it unlawful for "two or more persons [to] conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any *State... with intent to deny to any citizen the equal protection of the laws....*" Id. (emphasis added). The first clause expressly involves conspiracies to obstruct justice in federal courts, while the second clause involves conspiracies to obstruct justice in state courts. Unlike the first clause, which "outlaws *all* interference with any person's attempt to attend federal court," Keating v. Carey, 706 F.2d 377, 385 (2d Cir. 1983), the second clause explicitly requires that conspirators' actions "be motivated by an intent to deprive their victims of equal protection of the laws." This requirement has been interpreted to mean that plaintiff must allege discriminatory "racial, ethnic, or class-based animus" motivating the conspirators' action. Zemsky v. City of New York, 821 F.2d 148, 151 & n. 4 (2d Cir. 1987) (citing Kush v. Rutledge, 460 U.S. 719, 722-24 (1983)).

To the extent that Simon argues that defendants conspired to interfere with his "constitutional right to make good faith complaints" in housing court, a division of the New York City Civil Court, only the second clause applies, and so Simon must allege discriminatory intent. Although Simon offers no facts regarding his alleged disability, he provides a copy of a notice of change in payment of his Supplemental Security Income in the annexed exhibits to his amended complaint, and so the Court will assume that he is in fact disabled. Nevertheless, despite conclusory assertions that defendants "discriminate[d] against" him, Simon has made absolutely no claim that any of the defendants discriminated against him *because of* his disability, his race, or otherwise. Rather, the very reason Simon offers for this alleged discrimination is that defendants were retaliating against him for previously bringing his housing complaints. Am. Compl. ECF p. 7. The annexed exhibits reveal that the housing court proceedings commenced by Simon involved mailbox repair, mail tampering, and rent overcharge and do not appear to relate to Simon's disability. Retaliation for such

8

complaints does not suffice to establish class-based discriminatory intent. See Poles v. Brooklyn Comty. Housing & Servs., No. 10-cv-1733, 2010 WL 1992544, at *2 (E.D.N.Y. May 14, 2010) (retaliatory motivation not discriminatory animus); see also Fox v. County of Yates, No. 10-cv-6020, 2010 WL 4616665 at *4 n. 4 (W.D.N.Y. Nov. 12, 2010) (status as whistleblower not a protected class under Section 1985). Therefore, not only has Simon failed to provide any allegation of a conspiratorial agreement, he has failed to allege that defendants harbored discriminatory intent.

Section 1985(3) similarly prohibits a conspiracy between two or more persons to deprive another of the equal protection of the laws, or of equal privileges and immunities under the laws. Estes-El v. Dumoulin, No. 06-cv-2528, 2012 WL 1340805, at *6 (E.D.N.Y. Apr. 18, 2012) (citing Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1087 (2d Cir. 1993)). As under the second clause of 1985(2), the "equal protection" language requires that the conspiracy was motivated by a class-based discriminatory animus. Mian, 7 F.3d at 1087; Griffin v. Breckenridge, 403 U.S. 88, 102 (1971). As Simon has failed to allege that any defendant harbored an intent to discriminate, his conspiracy claims are dismissed pursuant to 28 U.S.C. §1915(e)(2)(B).

**IV. Housing Claims**

A. Federal Housing Discrimination Claims

The Fair Housing Act ("FHA"), as amended by the Fair Housing Amendment Act, makes it illegal "to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such a dwelling, because of a handicap of that person." 42 U.S.C. § 3604(f)(2)(A). Title II of the Americans with Disabilities Act ("ADA") prohibits public entities such as the City from denying government programs or services to, or otherwise discriminating against "qualified individual[s] with a disability...by reason

of such disability." 42 U.S.C. § 12132. Title III of the ADA prohibits discrimination "on the basis of disability" by private individuals who own, lease, or operate a place of public accommodation. 42 U.S.C. § 12182. Finally, the Rehabilitation Act of 1973, a predecessor to the ADA, provides that "[n]o otherwise qualified individual with a disability...shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

For purposes of the instant complaint, the FHA, ADA, and Rehabilitation Act impose similar standards with respect to disability discrimination, and so the Court will analyze them in tandem. See, e.g., Smith v. N.Y.C. Hous. Auth., 410 F. App'x 404, 406 (2d Cir. 2011). A plaintiff can base a claim of disability discrimination on "any of three available theories: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." Brief v. Albert Einstein Coll. of Med., 423 F. App'x 88, 90 (2d Cir. 2011) (quoting Fulton v. Goord, 591 F.3d 37 (2d Cir. 2009); Smith, 410 F. App'x at 406. Simon need not claim intentional discrimination to state a claim under "disparate impact" or "failure to accommodate" theories. See Krist v. Kolombos Rest. Inc., No. 11-cv-1263, 2012 WL 3002598, at *5 (2d Cir. Jul. 24, 2012) (failure to accommodate); Smith, 410 F. App'x at 406 (disparate impact). Nevertheless, he must do so under a disparate treatment theory, Smith, 410 F. App'x at 406, and must plead that defendants at least knew of his disability under a "failure to accommodate" theory. See Masjid Al-Tawheed, Inc. v. Town of Putney, 336 F. App'x 60, 62 (2d Cir. 2009); Sinisgallo v. Town of Islip Hous. Auth., No. 12-cv-1733, 2012 WL 1888140, at *28 (E.D.N.Y. May 23, 2012). Moreover, to state a prima facie housing discrimination claim under any of these statutes, a plaintiff must show "that he was qualified for an available benefit and was denied that benefit." Johnson v. Levy, 812 F. Supp. 2d 167, 180 (E.D.N.Y. 2011).

Even assuming that Simon has adequately alleged that he is disabled, that he is "qualified" as defined by the various statutes, and that he is legally entitled to inhabit the apartment at the rent-stabilized rate he claims,[2] he nevertheless has failed to make out a claim for discrimination under any of these statutes. Simon alleges that Blanding and Imotep overcharged him for rent, that Imotep brought court proceedings against him for holding over his tenancy and for rent arrears, and that Blanding and Imotep refused to provide a copy of his lease. However, plaintiff has failed to allege that either Blanding or Imotep even knew of his disability, let alone that they intentionally discriminated against him because of his disability. He thus cannot recover against either private defendant on disparate treatment or failure to accommodate grounds.

To the extent plaintiff is claiming housing discrimination against the City, he has not alleged any facially neutral policy or practice with a discriminatory effect, and so has not stated a claim under a disparate impact theory. See Tsombanidis v. West Haven Fire Dep't, 352 F.3d 565, 574-75 (2d Cir. 2003). Moreover, he has failed to allege any facts whatsoever suggesting that the City denied him any benefit or accommodation to which he was entitled because of his disability, or that he ever even requested a disability accommodation. Indeed, the exhibits reveal that the City actually accommodated plaintiff's requests to repair his mailbox despite denying his legal tenancy. As plaintiff has failed to allege any basis for recovery under the Fair Housing Act, the ADA, or the Rehabilitation Act, these claims against defendants are dismissed for failure to state a claim.

B. Claims for Violation of Rent Stabilization Laws and Failure to Acknowledge Tenancy

Simon alleges that Imotep, Blanding, and the HPD have failed to abide by rent stabilization

---

[2] See Sinisgallo v. Town of Islip Hous. Auth., No. 12-cv-1733, 2012 WL 1888140, at *26 (E.D.N.Y. May 23, 2012) ("As a general matter, in most cases, individuals who meet the definition of disability for purposes of receiving SSI or SSDI benefits also qualify as disabled under the federal disability statutes." (citing Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 797 (1999)).

laws or acknowledge his tenancy; however, these are matters of state housing law. "Federal courts do not have subject-matter jurisdiction over landlord-tenant matters." Rosquist v. St. Marks Realty Assoc., LLC, No. 08-cv-2764, 2008 WL 2965435, at *2 (E.D.N.Y. Aug. 1, 2008) (citing cases); see also Southerland v. N.Y.C. Hous. Auth., No. 10-cv-5243, 2011 WL 73387, *2 (E.D.N.Y. Jan. 7, 2011) (rule applies even where City is the landlord). As the Court has dismissed all of Simon's federal claims, it declines to exercise supplemental jurisdiction over claims relating to the disposition of the lawful landlord/owner of the apartment, Simon's tenancy, or any rent overcharge.

## Conclusion

The amended complaint, filed *in forma pauperis*, is dismissed as against all defendants for failure to state a claim. 28 U.S.C. § 1915(e)(2)(B). The Court is mindful that Simon already received an opportunity to amend his complaint in the 11-cv-6161 action with respect to defendants Kidera, Williams, Blanding, and Imotep, but failed to do so. Simon's amended complaint has not given this Court "any indication that a valid claim might be stated" against any defendant, Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795 (2d Cir. 1999), and so the Court declines to grant leave to amend. Simon's request for a "restraining order of protection" is denied. Any state law claims are dismissed without prejudice. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of an appeal. Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

S/Chief Judge Amon

Carol Bagley Amon
Chief United States District Judge

Dated: Brooklyn, New York
October 11, 2012